## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BRANDON ROBERTS,                    *

Plaintiff,                          *

v.                                  *            Civil Action No. ELH-20-0340

WEXFORD HEALTH SOURCES, INC.,       *
*et al.*,
                                    *
Defendants.                       ***

## <u>MEMORANDUM OPINION</u>

Brandon Roberts is a prisoner at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland.  On January 23, 2020, the court received the first two pages of Roberts's civil rights Complaint, filed under 42 U.S.C. § 1983.  ECF 1.  Roberts has filed three supplements to the Complaint.  ECF 8; ECF 10; ECF 11.  ECF 10 includes an exhibit.  In sum, Roberts alleges a denial of his constitutional rights pertaining to access to the courts and strip searches conducted during a transport between prison facilities.

Roberts's submission at ECF 8 is a "Verified Civil Complaint."  *Id.* at 1, 7.  The suit contains seven counts, alleging violations of Roberts's rights under the First, Fourth, Fifth, and Fourteenth Amendments.

In particular, Roberts has sued Wexford Health Sources, Inc. ("Wexford")[1]; John/Jane Doe Defendant[2];  and several individuals who are employed by the Maryland Department of Public Safety and Correctional Services ("DPSCS").  Counsel for the individuals has clarified by name

---

[1] In ECF 1, Roberts named "Wexford/Corizon Medical Services."  Wexford was the health care provider, not Corizon, and it has responded to the suit.

[2] Jane/John Doe has not been served with the Complaint.

the people who Roberts is attempting to sue, as follows:  J. Phillip Morgan, Warden, Maryland Correctional Training Center ("MCTC"); Jeffrey Nines, Warden, NBCI; Wayne Webb, former Commissioner of the Maryland Division of Correction ("DOC"); and Keith Lyons, Acting Warden, Jessup Correctional Institution ("JCI").  ECF 17; ECF 20; ECF 24; ECF 25.[3]  I shall sometimes refer to these individuals collectively as the "State Defendants."

As discussed below, several motions are pending.  No hearing is necessary to resolve them. *See* Local Rule 105.6 (D. Md. 2021).

## I.    Procedural Background

On September 20, 2021, defendants Morgan, Nines, Webb, and Lyons moved to dismiss or, in the alternative, for summary judgment.  ECF 25.  The motion is supported by a memorandum. ECF 25-1 (collectively, the "State Motion").  It is also supported by several exhibits.  Roberts requested an extension of time to respond to the State Motion (ECF 28), and the court granted the motion, extending Roberts's time to respond until April 25, 2022.  ECF 29.  But, Roberts did not respond at that time.

Wexford moved to dismiss on April 25, 2022 (ECF 31), supported by a memorandum. ECF 31-1 (collectively, the "Wexford Motion").  And, Wexford submitted several exhibits. Roberts did not seek an extension to respond.

Notably, after the filing of each defense motion, and pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk informed Roberts of his right to respond.  *See* ECF 26; ECF

---

[3]  The Clerk will be directed to revise the caption to list the following defendants:  Wexford Health Sources, Inc.; John/Jane Doe Defendant; J. Phillip Morgan, Warden of MCTC; Jeffrey Nines, Warden of NBCI; Wayne Webb, former Commissioner, Maryland Division of Correction; and Keith Lyons, Acting Warden of JCI.

33. He was also advised that the failure to file a response in opposition to the motions could result in the dismissal of his case. *Id.*

On April 15, 2022, Roberts moved for a "TRO" to restrain NBCI personnel from tampering with his files. ECF 35. Then, on April 29, 2022, the court received "Plaintiff's First Status Report," indicating that he had "health problems" but that he intended to respond to the pending motions in three days' time. ECF 36. By Order dated May 26, 2022 (ECF 37), I denied the TRO motion (ECF 35) but gave Roberts a "final" opportunity to respond to the defense motions, due by June 21, 2022. However, Roberts did not respond to either motion by that date.

Instead, on June 22, 2022, the court received correspondence from Roberts giving "Notice" that he will be making "late filings." ECF 38. On July 1, 2022, the court received an additional "status report" from Roberts dated June 13, 2022, stating that he has health issues, and will be "filing his opposition to the DOC defendants under separate cover." ECF 39. And, on July 1, 2022, the Court docketed plaintiff's "Motion For Discovery" (ECF 40), along with his Affidavit. ECF 40-1.

Then, on July 11, 2022, while this court was in the process of reviewing the defense motions, the court received from Roberts a combined "Response in Opposition" and a "Cross Motion for Partial Summary Judgment," pertaining to the State Defendants. ECF 41. Although the motion is dated June 20, 2022, Roberts includes a certificate of service dated June 28, 2022, and the mail was stamped as outgoing mail from the prison on July 8, 2022. ECF 41 at 10, 11; ECF 41-3. In other words, this filing was not timely provided for mailing to the court by the deadline of June 21, 2022.

On July 12, 2022, Wexford filed a reply in further support of its motion to dismiss and in opposition to plaintiff's cross-motion for summary judgment. ECF 43. Wexford noted the lateness

of plaintiff's filing and reasserted its argument in support of the Wexford Motion.  *Id.*  The State

Defendants have not replied to Roberts's opposition or cross motion.

Plaintiff's opposition to the State Motion was not timely filed.  However, Roberts did

notify the court during this time period that he had health issues and intended to file his opposition.

ECF 38, 39.  Further, there was no court ordered time deadline for plaintiff to file a cross motion

for summary judgment.

Giving plaintiff the latitude appropriate for a pro se litigant and in light of Roberts's

continued contact with the court and notification about his health issues, I will allow plaintiff's

response and cross motion to be deemed timely filed and considered by the court.  I note, however,

that although plaintiff labels his papers as both an opposition and a cross motion for partial

summary judgment, the content of the papers is simply an opposition.  Roberts does not advance

substance that would indicate it is a cross motion for summary judgment.  He states instead that "a

genuine issue of material fact" precludes summary judgment on his access to court and

unreasonable strip search claims.  ECF 41 at 3, 7.  As these are the only pending claims, he has

not advanced any argument for a grant of summary judgment in his favor.

For the reasons that follow, I shall grant the Wexford Motion.  The State Motion, styled as

a motion to dismiss or, in the alternative, for summary judgment, shall be construed as a motion

for summary judgment.  I shall grant the State Motion with respect to the access to court claim,

but deny the State Motion as to the strip search claim.  And, I shall deny plaintiff's cross motion

for summary judgment, as well as his discovery motion.

## II.    Factual Background

Roberts states that he "suffered" a small fracture to his left wrist while housed at NBCI.

ECF 8 at 2.  On or about December 16, 2015, he was scheduled to be transported to JCI to attend

a medical appointment at Bon Secours Hospital that week. *Id.* at 3. However, Roberts "refused" because he had a pending civil case in the South Carolina federal court that he needed "to address" by December 21, 2015. *Id.* He advised the medical department that prison officials would not allow him to take his legal documents with him if he left for the medical appointment. *Id.* "John & Jane Doe" then spoke to the warden, and twice assured Roberts that he would be transported back to NBCI after his appointment to "attend to his pending legal matters." *Id.*

On or about December 17, 2015, Roberts was transported to "Hagerstown" on route to Jessup. *Id.* The State Defendants clarify that Roberts's reference to "Hagerstown" is the location where MCTC is located, and this is the facility Roberts is referencing. ECF 17; ECF 25-4 at 2. While at MCTC, Roberts was informed by prison officials that he would not be transported back to NBCI after his appointment. ECF 8 at 3. However, medical personnel "re-assured" Roberts that he would be returned to NBCI after his appointment. *Id.*

On December 18, 2015, Roberts attended his medical appointment and was returned to JCI, not NBCI. *Id.* He filed a "complaint" with JCI about not being returned to NBCI, but no action was taken. *Id.* Roberts was not returned to NBCI until December 21, 2015. *Id.* On route to NBCI, the transport officers stopped at MCTC and Roberts was strip searched for a second time while being transported. *Id.* at 4.[4] Roberts was strip searched a third time upon arrival at NBCI. *Id.*; *see also id.* at 5.

Roberts states that his pending federal case in South Carolina was subsequently dismissed when a motion for summary judgment was entered in defendants' favor, because he could not file "a timely response." *Id.*; ECF 10 at 1-2.   He identifies that case as a wrongful death suit filed in

_____

[4] As best I can determine, Roberts does not specify when or where the first strip search occurred.

the South Carolina federal district court on behalf of his deceased father. ECF 10 at 1. It is captioned *Roberts, et al. v. Bodison, et al.*, Civ. Case 750-MGL-MGB.

According to Roberts, he complied with the prison grievance process prior to filing litigation, as required under the Prison Litigation Reform Act, and the final administrative decision in his case was entered by the Inmate Grievance Office ("IGO") on January 27, 2017. ECF 11 at 2. He provides a document from the IGO dated January 27, 2017, referencing IGO grievance number 20160426. ECF 10-1. The document states that Roberts failed to provide a copy of all the paperwork for the Administrative Procedure Remedy, or "ARP," and that these items had been requested in prior letters, one dated June 13, 2016, and the other dated September 16, 2016. *Id.* For this reason, the IGO was unable to determine the "nature and scope" of the original complaint and could not determine if Roberts had properly exhausted administrative remedies. *Id.* The grievance was then "administratively dismissed" as "wholly lacking in merit." *Id.*

As noted, the State Defendants have moved to dismiss or, in the alternative, for summary judgment. They assert in part that the Complaint should be dismissed because Roberts failed to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). ECF 25-1 at 11-13. They also contend that Roberts's claims are barred by the statute of limitations, and that he has failed to state a claim for relief, including a claim for lack of access to the court, and for violation of his due process rights. *Id.* at 9-11, 13-19.

The State's memorandum does not address the substance of Roberts's claim pertaining to strip searches during transport, other than to include with their motion a Declaration from defendant Wayne Webb, pertaining to strip search policies in place at that time. ECF 25-4. Webb states that when transferring an inmate housed in Western Maryland to the Central Region for an appointment, the inmate would be strip searched on arrival at MCTC and again on arrival at JCI.

He posits: "For security purposes, it was necessary to strip search all inmates each time they came into the facility from the transport van." *Id.* at 2.

In regard to exhaustion, the State Defendants submitted the Declaration of Robin Woolford, Deputy Director of the IGO. ECF 25-5. Woolford attests that Roberts filed one grievance with the IGO pertaining to an incident in 2015 regarding his transport to JCI for a medical appointment. *Id.* at 1. It has the same grievance number that Roberts provided: 20160426. *Id.* The grievance pertained to Roberts not being returned to NBCI after a medical appointment at Bon Secours Hospital on December 17, 2015, and he claimed that, "as a result, he missed a court date filing deadline." *Id.* at 1-2.

Further, Woolford states that Roberts did not submit all of the ARP paperwork with the grievance. The IGO requested additional information to determine if Roberts had properly exhausted an available ARP remedy, if the grievance was timely filed, and if the grievance was filed in the proper manner. *Id.* at 2. Roberts was then provided with an additional 30 days to submit the requested documentation and then, after that, an additional 30 days. *Id.* Roberts provided some documentation but not all the ARP paperwork that was requested. *Id.* As noted, the IGO administratively dismissed the grievance on January 27, 2017, for failure "to provide a copy of all the ARP paperwork requested." *Id. See also* ECF 10-1.

Roberts's opposition includes as an exhibit a copy of the ARP grievance he filed. ECF 41-1 at 1-4. The grievance complains of his inability to timely file his court papers and the multiple strip searches he received during transport. Roberts also provides a copy of his appeal to the IGO, and various correspondence from Roberts to the IGO providing additional requested information. *Id.* at 5-14. However, Roberts does not provide copies of correspondence received by him from the IGO, indicating what information was requested.

7

As mentioned, Wexford also moved to dismiss. ECF 31. Wexford asserts that Roberts's Complaint is time barred, that he fails to state a claim against Wexford because he does not allege that a policy or custom caused a violation of his federal rights, and he has not alleged that any Wexford employee violated his rights. ECF 31-1.

Wexford provides further information regarding the federal litigation filed in South Carolina that Roberts references in his Complaint. ECF 31-1 at 8-9. *See Roberts v. Bodison*, 2:14-00750-MGL-MGB, 2015 WL 13215670 (D.S.C. Nov. 20, 2015), *report and recommendation adopted,* 2:14-00750-MGL, 2015 WL 9581756 (D.S.C. Dec. 30, 2015).[5] Roberts was a plaintiff in the matter, along with his sibling, Julian Roberts. It was a wrongful death action filed on behalf of their father, who died of "a massive heart attack" in March 2011, while in the custody of the South Carolina Department of Corrections. *See id.*, ECF 31-2.

In that case, on November 20, 2015, the federal magistrate judge issued a Report and Recommendation to dismiss the civil action, which was filed under 42 U.S.C. §§ 1983, 1985, 1986, 1988, as well as the State law claims for wrongful death and under the "Survival Act." *Id.*, ECF 31-2 at 1. The magistrate judge determined that the plaintiffs lacked standing because neither one was the personal representative of their father's estate. Further, dismissal was recommended as to the state law claims, because the plaintiffs failed to file an expert affidavit, as required by South Carolina law, and because they advised the court that they did not intend to pursue the state law claims.

On December 30, 2015, U.S. District Judge Mary Lewis issued an Order adopting the Report and Recommendations, granting the motions to dismiss, and dismissing the case. *Id.*, ECF

---

[5] The Court may also take judicial notice of the filing of the suit. *See* F.R.E. 201.

31-3.  The dismissal order notes that the plaintiffs did not file any objections to the report.  *Id.*, 2015 WL 9581756, at *1.

The docket in that case reflects that Judge Lewis's Order was docketed on December 30, 2015.  *See id.*, ECF 106.  Judgment was entered that date.  *Id.*, ECF 107.  And, ECF 108 in that case reflects that both ECF 106 and ECF 107 were mailed to Roberts at NBCI.  *See also* ECF 31-4.  There is no indication that Roberts noted an appeal.

Wexford asserts that Roberts's time to file this case accrued on December 30, 2015, upon the issuance of the Order dismissing the case.  ECF 31-1 at 4-6.  Roberts asserts that the limitations period did not begin to run until the IGO dismissed his grievance on January 27, 2017.  ECF 11.

### III.    Standard of Review

#### A.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d

321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  And, the court must accept as true all facts alleged in the suit, and draw all reasonable inferences from those facts in favor of the plaintiff.  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).  And, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v. Navy Federal Credit Union*, ___ F. App'x ___, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*,

825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir.

2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also* Fed. R. Civ. P. 10(c); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

"[B]efore treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id*. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id*

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as

to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.  Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).

## B.

The State Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  But, under Rule 12(b)(6), a court, in its discretion, may consider matters outside

of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that

more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).  To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.   Fed. R. Civ. P. 56(d);  *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom, Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods,* 302 F.3d at 244 (citations omitted).  But, the nonmoving party's

failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not filed an affidavit under Rule 56(d) pertaining to the State Motion. [6] Moreover, I am satisfied that it is appropriate to address the State Motion as one for summary judgment, as this will facilitate resolution of the case.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has

---

[6] Plaintiff's motion for discovery pertains solely to Wexford. ECF 40.

clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original); *see Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651 659 (4th Cir. 2018).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  But, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 252.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004.  And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United*

*States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Brown v. Lott*, ___ F. App'x ___, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (citation omitted). In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the

moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## IV.    DISCUSSION

### A.    Wexford

Wexford asserts that Roberts's Complaint is time barred; that he fails to state a claim against Wexford because he does not allege that a policy or custom caused a violation of his federal rights; and Roberts has not alleged that any individual Wexford employee violated his rights. ECF 31-1.

The court begins and ends the discussion of the Wexford Motion with reference to the issue concerning the statute of limitations. Wexford contends that all of Roberts's claims, which he alleges were sustained in December 2015, are time barred based on the filing of the Complaint in January 2020. ECF 31-1 at 5.

Section 1983 does not contain a statute of limitations. Thus, to determine whether a § 1983 claim was timely filed, courts look to the statute of limitations from the most analogous state-law

cause of action. *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014), *cert. denied sub nom. Baltimore City Police Dep't v. Owens*, 575 U.S. 983 (2015); *see also* 42 U.S.C. § 1988(a) ("[I]n all cases where [the laws of the United States] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies ... the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause[.]").

A suit filed pursuant to 42 U.S.C. § 1983 constitutes a personal injury action. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. Md. Code (2020 Repl. Vol.), § 5-101 of the Courts & Judicial Proceedings Article ("C.J.").

"Limitations statutes ... are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy." *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 85, 904 A.2d 511, 526 (2006); *see Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665, 464 A.2d 1020, 1026 (1983). In Maryland, "[a]s a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit." *Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991).

Although the Maryland statute of limitations applies, the matter of when a cause of action has accrued under § 1983 is a federal question. *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975)); *see also*

*McDonough v. Smith*, ___ U.S. ___, 139 S. Ct. 2149, 2155 (2019). "An accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *McDonough*, 139 S. Ct. at 2155 (quoting *Manuel v. Joliet*, ___ U.S. ___, 137 S. Ct. 911, 920 (2017)).

A claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nassim*, 64 F.3d at 955 (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)); *see Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (stating that a cause of action accrues when the plaintiff "has actual or constructive knowledge" of the claim). But, accrual cannot occur until the plaintiff has (or should have) "possession of the critical facts that he has been hurt and who has inflicted the injury." *Kubrick*, 444 U.S. at 122 (discussing discovery rule in the context of the Federal Tort Claims Act, which requires notice to the government "within two years after such claim accrues"); *see also Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990) (en banc) ("The clear import of *Kubrick* is that a claim accrues ... when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury."); *Gilbert v. United States*, 720 F.2d 372, 374 (4th Cir. 1983).

However, "the answer is not always so simple." *McDonough*, 139 S. Ct. at 2155. "Where, for example, a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *Id.*

Maryland law is largely consistent with federal law. Therefore, I shall look to both federal and Maryland cases concerning accrual. As noted, under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. C.J. § 5-101; *see Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011). Ordinarily, "'the question of accrual in § 5-101 is left to judicial determination,'

unless the determination rests on the resolution of disputed facts regarding discovery of the wrong." *Poole*, 423 Md. at 131, 31 A.3d at 236 (citation omitted); *see Bank of N.Y. v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004) (stating that summary judgment may be appropriate if there is no dispute of material fact as to whether plaintiff was on inquiry notice more than three years before suit was file); *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000) (explaining that the determination of accrual "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

Nevertheless, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," the so-called discovery rule is sometimes used to determine the date of accrual. *See Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Frederick Road Ltd. P'ship*, 360 Md. at 95, 756 A.2d at 973. "The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 167, 857 A.2d 1095, 1104 (2004).

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 444, 749 A.2d 796, 801 (2000)), *aff'd*, 495 F. App'x 350 (4th Cir. 2012). Notably, "[t]his standard ... does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.' " *Dual Inc.*, 383 Md. at 167-68, 857 A.2d at 1104 (citing *Am. Gen. Assurance Co. v. Pappano*, 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003); *Doe v. Archdiocese of Wash.*, 114 Md. App. 169, 188-89, 689 A.2d 634, 644 (1997)).

A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and ... a diligent investigation would have revealed that the plaintiffs were victims of ... the alleged tort.'" *Dual Inc.*, 383 Md. at 168, 857 A.2d at 1104 (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49, 550 A.2d 1155, 1159 (1988)) (alterations in original). Inquiry notice must be actual notice, either express or implied. *Poffenberger v. Risser*, 290 Md. 631, 637, 431 A.2d 677, 681 (1981). In Maryland, "[c]onstructive notice or knowledge will not suffice for inquiry notice." *Benjamin*, 394 Md. at 89, 904 A.2d at 529; *see Poffenberger*, 290 Md. at 637, 431 A.2d at 681.

Based on the parties' filings, including certain exhibits that I may consider or that are subject to judicial notice under F.R.E. 201, the parties do not differ on the timeline of events. Rather, they dispute legal significance. Roberts alleges that the relevant events took place in December 2015, when he was transported for medical treatment, and continued through the date that his case was ultimately dismissed by the South Carolina federal court on December 30, 2015, and then through the IGO's dismissal of his grievance on January 27, 2017.

The history of the litigation in Roberts's South Carolina case indicates that Roberts did not appeal the decision of the district court. Significantly, Roberts does not allege any events or occurrences that took place in that case after December 30, 2015.

In my view, Roberts's claim as to Wexford accrued on December 30, 2015, which is the date when his federal case in South Carolina was dismissed. Roberts had three years from that date to file suit in this court, *i.e.*, he had until December 30, 2018. But, that date fell on a Sunday. And, the Court was closed on Monday, December 31, 2018. Therefore, defendant's time to file suit would have been extended to January 2, 2019, when the Clerk's Office reopened. *See* Fed. R. Civ. P. 6(a)(1)(C).

23

Roberts's incomplete Complaint, pages 1 and 2, unsigned and undated, was not received by this court until January 23, 2020.  *See* ECF 1. The partial Complaint was filed along with a civil cover sheet and motion for leave to proceed in forma pauperis, signed by Roberts and dated January 15, 2020. ECF 1-1, 2.  The envelope containing the motion bears postage that is stamped January 22, 2020.  ECF 2-1.

However, plaintiff is entitled to have the "prisoner mailbox rule" applied to determine the filing date of his Complaint. Pursuant to the prisoner mailbox rule, the date of filing is not the date the Complaint was received by the court.  Rather, it is the date Roberts put the Complaint in the hands of prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988) (a pro se litigant's legal papers are considered filed upon "delivery to prison authorities, not receipt by the clerk"); *see also Lewis v. Richmond Police Department*, 947 F.2d 733, 734-35 (4th Cir. 1991); *United States v. Dorsey*, 988 F. Supp. 917, 919-920 (D. Md. 1998).

Notably, Roberts signed the civil cover sheet and motion for in forma pauperis status on January 15, 2020. Thus, January 15, 2020, was the earliest possible date that Roberts could have delivered the Complaint to prison authorities for mailing.  However, as noted, Roberts's claims accrued on December 30, 2015, and the filing deadline was extended to January 2, 2019.

Roberts disputes that the operative date is the date his federal case in South Carolina was dismissed.  He asserts that the limitations period did not begin to run until he exhausted his administrative remedies on January 27, 2017.  ECF 11. As Wexford notes, however, exhaustion requirements are inapplicable to Roberts's claims against Wexford.  ECF 31-1 at 5; *see Velasquez v. Wexford Health Sources, Inc.*, PWG-16-1807, 2017 WL 4151278, at *10 (D. Md. Sept. 19, 2017).  There is no state administrative remedy process available to exhaust against Wexford, a medical contractor.  *See Abramson v Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501

(2000) (the Maryland prisoner administrative remedy process does not cover complaints made against private medical providers under contract with the State). Because the limitations period for claims against Wexford accrued on December 30, 2015, Roberts's Complaint against Wexford is untimely.

Therefore, I will grant Wexford's motion to dismiss on the basis that Roberts's claims are time barred.[7]

### B.    State Defendants

1. Exhaustion of Administrative Remedies

The State Defendants contend that Roberts failed to exhaust administrative remedies for claims brought against them.

If Roberts's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"). The PLRA provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516,

---

[7] As a result, the court need not address the remaining claims raised by Wexford.

532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence and provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (citations omitted). A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency

26

reaches a decision on the merits.  *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory.").    Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Id.* at 91 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original).  But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies.  42 U.S.C. § 1997e(a).  The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford*, 548 U.S. 89. Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 637. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 635-36. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-

28

44. The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

DPSCS has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.), §§ 10-201 *et seq.* of the Correctional Services Article ("C.S."); Code of Maryland Regulations ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction [DOC]." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies," as set forth in Title 10, Subtitle 2 of the Correctional Services Article. C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with IGO against any DOC official or employee. C.S. § 10-206(a). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.07.01.05B 2.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

29

The ARP process consists of multiple steps.  For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[8] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing. . . ."  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the

---

[8] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

hearing is conducted by an administrative law judge with the Maryland Office of Administrative

Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed

by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code § 10-206(a)(1) of the

State Government Article.

A decision of the administrative law judge denying all relief to the inmate is considered a

final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the

ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes

a recommendation to the Secretary of DPSCS, who must make a final agency determination within

fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR

12.07.01.10(B); C.S. § 10-209(b)(2)(c).

First, defendants assert that Roberts failed to exhaust his administrative remedies because

he did not seek judicial review of the IGO's final determination in a Maryland circuit court. ECF

25-1 at 12-13. The final agency determination is subject to judicial review in Maryland State court,

so long as the claimant has exhausted his remedies. *See* C.S. § 10-210. However, an inmate is not

required to seek judicial review in State court in order to satisfy the PLRA's administrative

exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all

administrative options that the state offers need not also pursue judicial review in state court.").

In addition, this court does not construe Roberts's Complaint as asserting any state law

claims. Therefore, defendants' argument that Roberts failed to comply with the Maryland Prisoner

Litigation Act, C.J. § 5-1001 *et seq.*, is inapplicable.

Second, defendants assert that Roberts failed fully to pursue his grievance because he did

not comply with requests to provide additional documentation. As a result, the IGO dismissed the

grievance, pursuant to C.S. § 10-207(b)(1). ECF 25-1 at 13. The final administrative decision was entered when the IGO issued the decision on January 27, 2017. ECF 11 at 2; *see* 10-1.

As mentioned, when filing a grievance with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). "[T]o be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively. *Moore*, 517 F.3d at 725 (citing *Woodford*, 548 U.S. at 88.

 Here, the IGO dismissal notice states the grievance was dismissed because Roberts did not provide "a copy of all the ARP paperwork requested." ECF 25-5; ECF 10-1. Roberts was sent two letters from the IGO requesting that he provide certain information. As noted, one letter was dated June 13, 2016, and the other was dated September 16, 2016. ECF 10-1. And, on January 27, 2017, the grievance was dismissed for failure to provide the required information. *Id.*

Although the State asserts that Roberts failed to respond to a request for ARP information, resulting in a dismissal of the IGO grievance, Roberts asserts in his Opposition that he did comply with the IGO's request for additional information by informing them that the commissioner failed to respond. ECF 41 at 9. Further, he states that the IGO also requested copies of the court documents and he timely sent the documents after receiving an extension of time. *Id.* at 10. Roberts provides various correspondence he sent to the IGO providing additional requested information. ECF 41-1 at 5-14.

The State Defendants did not reply to Roberts's opposition. Neither Roberts nor the State Defendants provided the court with copies of the IGO's requests to Roberts for additional

information.  The record contains only the correspondence that Roberts sent to the IGO, purportedly responding to its requests for additional information. It is not possible from the record to determine what information the IGO requested from Roberts.

In sum, the State Defendants have not shown that an exhaustion defense applies. Without a complete record, there is a factual dispute as to whether Roberts exhausted his administrative remedies.  The State Defendants' exhaustion defense will be denied, without prejudice.

2.  Statute of Limitations

The State Defendants contend that plaintiff's claims are barred by the statute of limitations. ECF 25-1 at 9-11.  They state that because Roberts's Complaint was filed on February 3, 2020, any claims for alleged injuries that he sustained before February 3, 2017, are time barred.

Defendants' calculations are incorrect. State statutes of limitation applicable to the filing of § 1983 complaints are subject to equitable tolling during the time a prisoner is exhausting administrative remedies. *Battle v. Ledford*, 912 F.3d 708, 719–20 (4th Cir. 2019).  The State has failed to put forth a defense that accounts for the time period that Roberts was engaged in the process of exhausting the grievance procedure.  On the record before the court, that period ended on January 27, 2017, when the IGO administratively dismissed the grievance.  ECF 10-1.

As discussed above, Roberts's incomplete Complaint was received by this court on January 23, 2020.  *See* ECF 1. The partial Complaint was filed along with a civil cover sheet and motion for leave to proceed in forma pauperis, signed by Roberts and dated January 15, 2020. ECF 1-1, 2.  The envelope containing the motion bears postage that is stamped January 22, 2020.  ECF 2-1.  All of these dates are within the three year statute of limitations when accounting for tolling during the period of exhaustion.

Therefore, I shall deny the State Motion with respect to the defense of statute of limitations.

3.  Access to Court Claim

The State Defendants assert that Roberts fails to state a claim that his constitutional right to access the court has been denied.  ECF 25-1 at 15-17.  They argue that the nature of the South Carolina litigation, namely a wrongful death action on behalf of Roberts's father, is beyond the scope of the right to access the court.  Plaintiff, in his opposition, does not respond to the substance of this argument as relates to the nature of the litigation.  ECF 41.

Prisoners have a constitutionally protected right of access to the courts.  *See Bounds v. Smith*, 430 U.S. 817, 821 (1977).  However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).  Prisoners' constitutional rights are protected so long as they are afforded a "reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis*, *Id.* (citations omitted).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355).  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  *Lewis*, 518 U.S. at 349.   Actual injury occurs when a prisoner

demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399.

In *Christopher v. Harbury*, 536 U.S. 403, 403 (2002), the Court characterized access-to-the courts claims as being in one of two categories. *Id.* at 413-14. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arises when a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id*. at 1208. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress' "in the courts. *Id*. (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

The federal litigation in South Carolina, pertaining solely to the death of plaintiff's father, is neither a challenge to Roberts's criminal sentence nor does it pertain to conditions of his confinement. *See O'Dell*, 112 F.3d at 776. Roberts has not adequately raised a claim of denial of

access to the court due to the nature of the South Carolina litigation.  Therefore, I shall grant

summary judgment to the State Defendants as to plaintiff's access to court claim.

    4.  Strip Search Claim

    Roberts contends that he was subjected to unreasonable strip searches during his transport

from JCI to MCTC to NBCI.  ECF 8 at 3.  He asserts that the strip search at each location was

unnecessary because he was under continued observation during transport, and further that the

transport stop itself at MCTC was unnecessary.  *Id.* at 4-5.

    The State Defendants do not address the strip search claim in the legal analysis section of

their memorandum filed in support of the State Motion.  ECF 25.  In stating the facts, they refer to

the Declaration of Wayne Webb, the former Commissioner of the DOC.  He addresses the policy

of transporting prisoners and strip searches.  ECF 25-4.  Although the Declaration contains a

general statement of policy, it provides little, if any, insight to the issue at hand.  Webb declares

that he has "no specific memory of Plaintiff Brandon Roberts."  ECF 25-4 at 1.  He then concludes,

without analysis, that "[f]or security purposes, it was necessary to strip search all inmates each

time they came into the facility from the transport van."  *Id.* at 2.  The State Defendants do not

assert that Roberts has failed to state a claim on the strip search issue, and the Declaration appears

to be relevant only to the statement of facts.

    In sum, the State Defendants have presented a general argument that Roberts fails to allege

the personal involvement of any state actors.  ECF 25-1 at 13-15.  However, the State has failed

substantively to address Roberts's unreasonable strip search claim, and the court cannot resolve

the claim on this record.

    Based on the record before the court, I shall deny the State Motion as to the strip search

claim.  Although prison administrators are entitled to substantial deference in "defining the

legitimate goals of a corrections system and for determining the most appropriate means to accomplish them[,]" *Overton v. Bazzetta*, 539 U.S. 126 (2003) (citations omitted), Webb's conclusory statement does not provide sufficient information by which the court can discern the basis for this policy, and if substantial deference is appropriate.

At this juncture, the strip search claim may proceed against the named defendants, with the exception of the John and Jane Doe Defendants, for whom there are no allegations presented that relate to this claim. But, the denial of the State Motion is without prejudice to the right of the parties to file an additional motion with the court if they wish to move for summary judgment on this claim.

### V. Motion for Discovery

On July 1, 2022, the court received for filing Roberts's "Motion For Discovery" under Fed. R. Civ. P. 56(d)(2). ECF 40. Roberts states that he is "unable to properly move for summary judgment against Wexford" without additional information. *Id.* at 1. The Affidavit in support of the motion (ECF 40-1) states that he needs information from Wexford to "prove" his case against Wexford. *Id.* at 1. Roberts is seeking information that goes to the merits of his claim, in contrast to obtaining information that pertains to the time bar issue.

However, Roberts's claim against Wexford will be dismissed as time barred. Therefore, I will deny his Motion For Discovery, as moot.

### VI. Conclusion

For the foregoing reasons, the Wexford Motion is GRANTED; the suit shall be dismissed against Wexford. The State Motion, construed as a motion for summary judgment, is GRANTED in part and DENIED in part. The State Defendants shall respond to the claim pertaining to unreasonable strip searches. As to all other claims, summary judgment shall be entered in favor

of the State Defendants.  Roberts's Motion for Discovery is DENIED, as moot.  And, plaintiff's cross motion for summary judgment is DENIED.

A separate Order follows.

July 26, 2022                                                  _____/s/_____
Date                                                             Ellen L. Hollander
                                                                   United States District Judge