IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRANDON ROBERTS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. ELH-20-0340 |
| WEXFORD HEALTH SOURCES, INC., *et al.*, | * | |
| | * | |
| Defendants. | *** | |

## MEMORANDUM

Brandon Roberts is a prisoner at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. He initiated this civil rights action by filing a Complaint, pursuant to 42 U.S.C. §1983. ECF 1. The Complaint was subsequently supplemented, clarified, and verified. ECF 8; ECF 10; ECF 11.

By Memorandum Opinion and Order of July 26, 2022, I granted the motion to dismiss filed by defendant Wexford Health Sources, Inc. ("Wexford"). ECF 44, ECF 45. I also granted in part and denied in part the motion to dismiss or for summary judgment filed by the remaining defendants, all of whom were employed by the Maryland Department of Public Safety and Correctional Services ("DPSCS"): NBCI Warden Jeffrey Nines; J. Phillip Morgan, Warden, Maryland Correctional Training Center ("MCTC"); Wayne Webb, former Commissioner of the Maryland Division of Correction; and Keith Lyons, Acting Warden, Jessup Correctional Institution ("JCI"). *Id.* In particular, I denied summary judgment as to plaintiff's claim that he was subjected to unreasonable strip searches conducted during a transport between prison facilities, allegedly in violation of his constitutional rights. But, I granted summary judgment as to plaintiff's claim of

denial of access to the courts.[1]

On October 25, 2022, defendants Nines, Morgan, Webb, and Lyons moved to dismiss or for summary judgment (ECF 55), supported by a memorandum (ECF 55-1) (collectively, the "Motion"). Defendants have also submitted an exhibit under seal, which is the search protocol for inmates in DPSCS custody. ECF 57. They assert that Roberts's strip search claim fails, as he has not stated a constitutional violation. In addition, they assert that the named defendants are supervisors who were not personally involved or responsible. ECF 55.

On October 26, 2022, Roberts was notified of his right to respond to the Motion. ECF 60. But, other than notifying the court that he would be filing a late response, and providing a "status report," he has not filed a response. *See* ECF 68, ECF 69. The Motion is ripe for disposition. No hearing is necessary. Local Rule 105.6.

For reasons that follow, I shall construe the Motion as one for summary judgment and grant it in favor of the defendants.

### I. Factual Background[2]

---

[1] The Court notes that Roberts filed an interlocutory appeal from this court's decision, which remains pending before the United States Court of Appeals for the Fourth Circuit. ECF 47, ECF 67. In the decision from which Roberts appealed, I granted Wexford's motion pertaining to all claims brought against it, and granted the motion of the DPCS defendants as to plaintiff's claim that he was denied access to the courts. However, I denied the motion by the DPSCS defendants as to the strip search claim, without prejudice to the right to refile. This court retains jurisdiction because the decision on appeal does not constitute a "final" judgment resolving all claims against all parties. *See* 28 U.S.C. § 1291; *Fox v. Baltimore City Police Dept.,* 201 F.3d 526, 530 (4th Cir. 2000).

[2] I incorporate the factual background set forth in my Memorandum Opinion of July 26, 2022. *See* ECF 44 at 4-9. The facts relevant to the pending Motion are set forth in this Memorandum.

Roberts asserts that he suffered a small fracture to his left wrist while housed at NBCI. ECF 8 at 2. On or about December 16, 2015, he was scheduled to be transported to JCI for a medical appointment at Bon Secours Hospital that week. *Id.* at 3.

On or about December 17, 2015, Roberts was transported "temporarily" to "Hagerstown" on route to JCI for his medical appointment. *Id.* The defendants clarify that Roberts's reference to "Hagerstown" is the location where MCTC is located, and that this is the facility Roberts is referencing. ECF 25-1, ECF 25-4 at 2.

Roberts attended his medical appointment on December 18, 2015, and was then returned directly to JCI. ECF 8 at 3. On December 21, 2015, Roberts was transported from JCI to NBCI, with a stop at MCTC "simply to switch transport guards." *Id.* at 3-4. On arrival at MCTC, Roberts was escorted to a cage and strip searched a second time. *Id.* at 4.[3] While at MCTC, Roberts was under "continuous observation" by the same transporting guards. *Id.* He was then transported to NBCI, where he was strip searched a third time. *Id.*; *see also id.* at 5. Roberts had again been under "continuous observation" by the transport officers during his transport from MCTC to NBCI. *Id.* at 4.

At the time of the NBCI strip search, there was video surveillance, where staff and other employees, both male and female, "can view or glance" at the surveillance. *Id.* Roberts complains that he should have been strip searched once, not three times, during his trip from JCI to NBCI. *Id.* at 5.

The defendants' memorandum in support of the Motion references a Declaration from defendant Wayne Webb, submitted with an earlier filing, pertaining to strip search policies in effect

---

[3] As noted in my prior Memorandum Opinion, as best I can determine, Roberts does not specify when or where the first strip search occurred. ECF 44 at 5 n.4.

at the time the events are alleged to have taken place. ECF 55-1 at 3, 25-4. Webb states that in December 2015, inmates were regularly transported from Western Maryland to the Central Region to attend court dates or medical appointments. ECF 25-4, at ¶ 4. Further, to conserve resources, and assure attendance at appointments, inmates with appointments geographically near to each other with a specific timeframe would be transported together. *Id.* When transferring an inmate housed in Western Maryland to the Central Region for an appointment, the inmate would be strip searched on arrival at MCTC and again on arrival at JCI. *Id.* at ¶ 6, He posits: "For security purposes, it was necessary to strip search all inmates each time they came into the facility from the transport van." *Id.* at ¶ 7.

Defendants provide the DPSCS inmate search protocol in effect during the relevant timeframe. *See* Confidential Executive Directive Number OPS.110.0047 ¶ F(1)(A). ECF 57 (under seal). The protocol requires that correctional staff strip search an inmate who is admitted to a facility from another correctional or detention setting. *Id.*

## II. Standards of Review

### A.

Roberts is self-represented. Therefore, his submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); see Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks

omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).

**B.**

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert

the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Shaw v. Foreman*, ___ F.4th ___, 2023 WL 1486310, at *4 (4th Cir. Feb. 3, 2023); *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*,

302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d)

motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

The Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit.'" *Harrods*, 302 F.3d at 244 (internal citation omitted). Nevertheless, the Court has "not always insisted" on a Rule 56(d) affidavit. *Id.* Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

On the other hand, "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of [Rule 56(d)] to set out reasons for the need for discovery in an affidavit." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (citing *Hayes v. N. State L. Enf't Officers Ass'n*, 10 F.3d 207, 215 (4th Cir. 1993)); *see also Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 972 n.3 (4th Cir. 1990) ("[I]f plaintiffs genuinely were concerned that defendant's motion was premature, plaintiffs should have sought relief under Fed. R. Civ. P. 56[(d)].").

As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray*, 741 F.3d at 483; *accord Putney*, 656 F. App'x at 639. And, the Fourth

8

Circuit recently reaffirmed this principle when it concluded that a district court abused its discretion by granting summary judgment before discovery, even though the plaintiff failed to comply with Rule 56(d), because "the district court was on fair notice of potential disputes as to the sufficiency of the summary judgment record." *Shaw v. Foreman*, 2023 WL 1486310, at *5. In the case, much of the evidence the plaintiff needed involved the subjective knowledge of the prison officials or was in their exclusive control. *Id.*; *see also Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021).

Here, Roberts filed a Motion for Discovery (ECF 63), which I denied. ECF 65, ECF 66. In particular, plaintiff sought (1) a copy of "any video conference recording, fax report, email, teleconference recording disc or any tangible information related to any communications the warden at NBCI had with medical officials" related to his transfer to Bon Secours Hospital during the week prior to December 17, 2015 (ECF 63-3 at 1); (2) the names of the officers who transported him from NBCI to JCI, communications they received regarding his transfer, and a copy of the "Bed Management Report" at MCTC during the relevant time period, in order to determine if he spent the night at MCTC during his scheduled appointment at the hospital (ECF 63-3 at 2); (3) the name of the transporting officers who transferred him to JCI after his medical appointment and communications they received; (4) the names of the officers who transported him from JCI to NBCI and communications they received; and (5) a "record, report and/or invoice" of the dates and time when he was picked up and transferred from each facility. *Id.* In support of his motion, Roberts stated that he needed discovery related to his remaining requests (the names of all officers, and their communications, pertaining to his transfers, and a bed management report) to determine if he spent the night at MCTC. *Id.*

9

In denying the discovery motion, I noted that Roberts did not explain how any communication between the warden and a medical official relates to his strip search claim or how the information is essential to his opposition. ECF 65 at 4. Compare *Brooks v. Johnson*, 924 F.3d 104, 110 (4th Cir. 2019). I also noted that it appears Roberts was trying to determine whether he spent the night at MCTC. But, this is information entirely of his own knowledge, and thus discovery is not necessary to present such information. ECF 65 at 4. Indeed, testimony based on personal knowledge or firsthand experience can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 Fed. App'x 209, 212 (4th Cir. 2017).

Further, to the extent plaintiff was trying to establish the officers' "purpose" in stopping at MCTC, and the purpose of the stop at each facility, this information is not relevant to plaintiff's claims against the named defendants in this action. Indeed, Roberts has not named any correctional officers as defendants. In addition, the fact that the strip searches were conducted is not contested.

Accordingly, I am satisfied that it is appropriate to address the Motion as a motion for summary judgment, as this will facilitate resolution of this case.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a). It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact

so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248; *see Tom v. Hospitality Ventures, LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 522 (quoting former Fed. R. Civ. P. 56(e)). Moreover, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

Thus, the trial court may not make credibility determinations on summary judgment. *Kellen v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)). Moreover, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also, e.g.*, *Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at

659; *Harris v. Home Sales Co.*, 499 Fed. App'x 285, 294 (4th Cir. 2012). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Moreover, testimony based on personal knowledge can give rise to a dispute of material facts. *Lovett*, 700 Fed. App'x at 212. Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'" *Cowgill v. First Data Technologies, Inc.*, 41 F. 4th 370, 383 n.8 (4th Cir. 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

In sum, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Judd*, 718 F.3d at 313. On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III.   Discussion

Roberts alleges that his Fourth Amendment rights were violated when he was subjected to repeated strip searches during his transport from his medical appointment back to NBCI. Defendants assert that Roberts has not asserted a constitutional violation.

The Fourth Amendment guards against unreasonable searches and seizures. U.S. Const. amend. IV. Although the Fourth Amendment applies to lawfully confined prisoners, inmates have much more limited privacy interests than those who are not incarcerated. *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981); *Harper v. Campbell*,

SAG-20-170, 2021 WL 533729, at *8 (D. Md. Feb. 12, 2021); *Hudson v. Goodlander*, 494 F. Supp. 890, 891 (D. Md. 1980).

The exposure of a body cavity, conducted as part of a strip search at a penal institution after contact visitation, does not violate an inmate's Fourth Amendment rights if the search is reasonable and not motivated by punitive intent. *Bell*, 441 U.S. at 558-61. To determine if such a search is reasonable, courts consider: 1) the scope of the intrusion; 2) the manner in which it was conducted; 3) the justification for the search; and 4) the place in which it was conducted. *Id.* at 559.[4]

"'In *Bell*, the Supreme Court held that a reasonableness inquiry requires a court to balance the need for the particular search against the invasion of the personal rights that the search entailed.'" *Coley v. Harris*, 30 F. Supp. 3d 428, 434 (D. Md. July 7, 2014) (quoting *Amaechi v. West*, 237 F.3d 356, 361 (4th Cir. 2001)). This requires "a contextual analysis, looking at the scope of the intrusion, the manner in which it was conducted, its justification," and the location. *Coley*, 30 F. Supp. 2d at 434. Further, courts should also give deference to decisions made by officials relating to their administration of a prison facility. *Bell*, 441 U.S. at 547. As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012).

According to Roberts, on December 18, 2015, he was returned to JCI after his medical appointment. ECF 8 at 3. On December 21, 2015, he left JCI and a stop was made at MCTC, where he claims that a second strip search was conducted. *Id.* at 4. Roberts was then transported to NBCI, where a third strip search was conducted on arrival. *Id.*; *see also id.* at 5. He states that at the NBCI strip search, there was video surveillance, where staff and other employees, both male

---

[4] Plaintiff does not allege the exposure of a body cavity as part of the strip search.

and female, "can view or glance" at the surveillance. *Id.* at 5. Notably, Roberts does not allege that staff or other employees actually saw the strip search.

Roberts maintains that he should have been strip searched once, not three times, during his trip from JCI to NBCI. *Id.* at 5. He does not allege that any of the searches were conducted by force, improperly performed, or done with the intent to punish. His claim is narrow and pertains to the numerosity of strip searches. *Id.*

Defendants do not dispute that Roberts was strip searched on three occasions, although they note, as has the court, that Roberts provided information only as to two of these alleged searches. ECF 44 at 5 n.4, ECF 55-1 at 4. Rather, they assert that the policy in effect at the relevant time necessitated the strip searches for security reasons. According to the policy, when inmates are admitted to a facility from another correctional facility or detention setting, they must be strip searched to determine if the inmate is in possession of contraband. ECF 25-4, ECF 57.

The *Bell* factors support the reasonableness of defendants' need to perform the strip searches at issue in this case. Defendants have provided security justification for each search, supported by the policy in effect at that time. The mere fact that Roberts was in continuous custody did not obviate the need for correctional officers to perform a strip search before each transfer to another facility, to protect against the smuggling of contraband. Contraband could include drugs, which are easily hidden, and weapons. The searches, as described by plaintiff, were limited in scope and duration. Moreover, the transport route taken by defendants was the normal procedure in effect at that time.

## VI. Conclusion

The searches were not unreasonable under the Fourth Amendment. For the foregoing reasons, I shall construe the Motion as a motion for summary judgment and grant it.[5]

A separate Order follows.

Date: February 10, 2023

                                                                   /s/  
                                                             Ellen L. Hollander  
                                                             United States District Judge

---

[5] In light of my ruling, I need not consider defendants' additional defenses of failure to allege personal involvement and supervisory liability.